# In the United States Court of Federal Claims

No. 18-1174C

(Filed: January 29, 2019)

**(NOT TO BE PUBLISHED)**

```
*********************************  )
KENDALL LOCKLEAR, et al.,          )
                                   )
                    Plaintiff,     )
                                   )
    v.                             )
                                   )
UNITED STATES,                     )
                                   )
                    Defendant.     )
                                   )
*********************************
```

Kendall Locklear, *pro se*, Maxton, North Carolina and Christopher Hardison, *pro se*, Windsor, North Carolina.

Sara E. Costello, Trial Attorney, Environmental & Natural Resources Division, Natural Resources Section, United States Department of Justice, Washington, D.C., for defendant. With her on the motion and brief were Jean Williams, Deputy Assistant Attorney General, Environmental & Natural Resources Division, United States Department of Justice, Washington, D.C., and James W. Porter, Attorney Advisor, Office of the Solicitor, Department of the Interior, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Senior Judge.

Plaintiffs Kendall Locklear and Christopher Hardison assert claims on behalf of themselves, other unidentified individuals, and an entity called the "Six Nations of Indians." They allege land and property takings, identity theft, treaty violations (including "bad men clauses"), improper arrest and ticketing, and human and religious rights violations stemming from the actions of various local, state, and federal officials. Compl. at 2-3, 7-9.[1] Pending before the court is the government's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC") for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. *See* United States' Mot. to Dismiss . . . ("Def.'s Mot."), ECF No. 9. Because the court lacks subject-matter jurisdiction and the

---

[1]Citations to the complaint will refer to the assigned ECF page numbers.

plaintiffs have failed to state a claim for which relief can be granted, the government's motion to dismiss the complaint is GRANTED.

## BACKGROUND

Mr. Locklear and Mr. Hardison identify themselves as "[t]reaty Indians" who are members of the "Six Nations of Indians." Compl. at 3, 7, 12-13. The plaintiffs concede that the "Six Nations of Indians" is not a registered tribe with the Bureau of Indian Affairs. Compl. at 6.[2] They claim instead that the "Six Nations of Indians" is a "separate sovereign [n]ation[] possessing powers of authority to enact their own laws without needing to get permission from any other foreign governmental entity." Compl. at 4 (emphasis removed). The "Six Nations of Indians" appears to be a reference to the "Six Nations" of tribes that composed the Iroquois Confederacy after 1720. *See Federal Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99, 121 n.18 (1960) (The Six Nations consisted of the Oneidas, the Mohawks, the Onondagas, the Cayugas, the Senecas, and the Tuscaroras.). Although plaintiffs make passing references to the recognized tribes which comprised the Six Nations, they do not claim to be actual members of any of those tribes. *See* Compl. at 5-6, 7-8, 8-9. Rather, they aver they are "Treaty Indians." Compl. at 5-6, 7-8, 8-9.

In their complaint, the two plaintiffs assert "attempt[s] to strip a [t]reaty Indian of their [t]reaty [rights]," which resulted in "a form of [r]ape[] and molestation, as well as [f]raud, and possible attempted genocide, intimidation, coercion, theft by deception, identify theft, [t]reaty [v]iolations, [r]eligious [r]ights violations, and other types of [h]uman [r]ights violations." Compl. at 3 (emphasis removed). These "attempts" arise from a variety of interactions between the plaintiffs and local, state, and federal officials. They include an unnamed plaintiff being charged with possession of marijuana, the use of the name "Onondaga" by New York State without permission, 15 "Onondaga [t]reaty Indians" being harassed and beaten by state highway patrol officers, state game wardens giving Mr. Locklear "18 years" of tickets for illegal hunting, the closing of a state court on Memorial Day and the subsequent holding of Mr. Locklear in contempt, and an issue with an unidentified individual at the United States border with Canada. Compl. at 5-9.

The "treaty rights" claimed by the plaintiffs allegedly arise from the Treaty of 1794 between the United States and the Six Nations Iroquois Confederacy, 7 Stat. 44 (Nov. 11, 1794). Also known as the Treaty of Canandaigua or the Pickering Treaty, the Treaty of 1794 "recognized the land rights of certain members of the Iroquois Confederacy . . . and was one of the first federal treaties executed between the United States and any Native American tribe under the authority of the United States Constitution." *Banner v. United States*, 238 F.3d 1348, 1350 (Fed. Cir. 2001). The Treaty of 1794 was in many ways a reaffirmation of an earlier treaty signed under the Articles of Confederation, the Treaty of Fort Stanwix in 1784. *Id.* Both treaties sought peace between the young American nation and the Iroquois Confederacy (many of whose members fought alongside the British during the Revolutionary War), and to recognize certain

---

[2]*See* Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 83 Fed. Reg. 34863-68 (July 23, 2018).

2

Iroquois land holdings. *See id.*; *see also Six Nations v. United States*, 173 Ct. Cl. 899, 902 (1965).

The plaintiffs request a wide variety of relief based on the alleged violation of the Treaty of 1794. They seek the return of 20,000 acres of land, Compl. at 8, "$20,000,000 [] to be extracted from the Treaty Account-War Bonds at the State Department" for Mr. Locklear, Compl. at 8 (capitalization removed), and 20 live eagles, Compl. at 8. Also in the complaint is a demand for the "[r]eturn of [a]ncestral [h]omelands," "$332,700,000 [from] [t]reaty [a]nnuities," the "return of all property seized" due to treaty violations, and "$17,000,00[sic]" per day for lost revenue related to "economic development enterprises being destroyed." Compl. at 11.[3]

## STANDARDS FOR DECISION

*Rule 12(b)(1) – Lack of Subject-Matter Jurisdiction*

As a threshold matter, jurisdiction must be established before the court may proceed to the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). When jurisdiction is challenged, the plaintiff bears the burden of proving subject matter jurisdiction. *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010). While a *pro se* litigant is afforded some leniency as to legal formalities, this does not relieve him or her from meeting his or her jurisdictional burden. *Kelley v. Secretary, United States Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

The Tucker Act provides this court with jurisdiction to entertain "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is a jurisdictional statute that creates no substantive right to money damages. *In re United States*, 463 F.3d 1328, 1333 (Fed. Cir. 2006). Thus, to establish jurisdiction, a plaintiff is required to "point to a substantive right to money damages against the United States." *Hamlet v. United States*, 63 F.3d 1097, 1101 (Fed. Cir. 1995) (citing *United States v. Testan*, 424 U.S. 392, 398 (1976)).

Similarly, the Indian Tucker Act confers jurisdiction upon this court to hear claims accruing after August 13, 1946, that would otherwise be cognizable in this court if the claimant were not an Indian tribe or group. *See* 28 U.S.C. § 1505; *United States v. Navajo Nation*, 556 U.S. 287, 289-90 (2009). The Indian Tucker Act applies to "tribe[s], band[s], or other identifiable group[s] of American Indians," and not individual tribal members. *See* 28 U.S.C. §1505; *see also Tsosie v. United States*, 825 F.2d 393, 401 (Fed. Cir. 1987) ("[A]n Indian tribe

---

[3] A letter from an attorney, a Mr. Gary J. Silversmith, is attached to the front of the complaint. Compl. at 1. The letter states that Mr. Silversmith will represent Mr. Locklear regarding the recognition of his "status in Indian Country." Compl. at 1. But Mr. Locklear and Mr. Hardison are appearing *pro se*, as only their signatures appear on the complaint and there are no other mentions of Mr. Silversmith or any appearance by him as counsel of record. Compl. at 12, 13.

can sue on a treaty under 28 U.S.C. § 1505 and an individual Indian can sue under 28 U.S.C. § 1491 and base the claim in either case on an Indian treaty . . . ."). Substantive rights are not created by the Indian Tucker Act, so plaintiffs must identify a separate source of law that establishes specific duties and allege that the government has failed to perform those duties. *Hopi Tribe v. United States*, 782 F.3d 662, 666 (Fed. Cir. 2015) (citing *Navajo Nation*, 556 U.S. at 290).

A complaint raising claims that are outside this court's jurisdiction must be dismissed, for the court has no adjudicative power over it. RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Gray v. United States*, 69 Fed. Cl. 95, 98 (2005) (citing *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause."); *Thoen v. United States*, 765 F.2d 1110, 1116 (Fed. Cir. 1985)).

*Rule 12(b)(6) – Failure to State a Claim for which Relief can be Granted*

Under Rule 12(b)(6), a complaint that "fail[s] to state a claim upon which relief can be granted" must be dismissed. To survive a motion invoking Rule 12(b)(6), a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court is bound "to take the well-pleaded factual allegations in the complaint as true." *Papasan v. Allain*, 478 U.S. 265, 283 (1986); *see also Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009). "However, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007) (*quoting Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)); *see also, e.g., Williams v. United States*, 100 Fed. Cl. 263, 275 (2011) (citing *Gant v. United States*, 417 F.3d 1328, 1331 (Fed. Cir. 2005)).

## ANALYSIS

Plaintiffs are not, and do not claim to be, members of any federally recognized tribe, but rather assert they are "treaty Indians," Compl. at 2-3, a nebulous term that carries no intrinsic legal rights. In the circumstances, the government contends that this court lacks jurisdiction because the plaintiffs were not a party to the Treaty of 1794, cannot represent the "Six Nations of Indians" or other plaintiffs, fail to identify a money-mandating duty, seek equitable relief outside this court's jurisdiction, and fail to state sufficient facts to sustain their complaint. *See* Def.'s Mot. at 6-17. For the following reasons, the court agrees.

### A. Rule 12(b)(1) – Lack of Subject-Matter Jurisdiction

As a preliminary matter, Mr. Locklear and Mr. Hardison fail to provide "a short and plain statement of the grounds for the court's jurisdiction," RCFC 8(a), based on the Tucker Act or otherwise, *see Ruther v. United States*, No. 18-1110C, 2018 WL 5095451, at *3 (Fed. Cl. Oct. 17, 2018). Although the plaintiffs provide a litany of grievances, including the alleged theft of

land, nowhere does the complaint set out a rationale for why this court has jurisdiction over their claims nor can one be readily inferred from their claims. Their complaint is unavailing on this failure alone.

1. *Mr. Locklear and Mr. Hardison may not represent others as* pro se *litigants.*

This court does not have jurisdiction over the claims Mr. Locklear and Mr. Hardison, as *pro se* litigants, bring on behalf of the "Six Nations of Indians" and its other members. The Rules of this court provide that "[a]n individual who is not an attorney may represent oneself or a member of one's immediate family, but may not represent a corporation, an entity, or any other person in any proceeding before this court." RCFC 83.1(a)(3). The term "immediate family members" is defined as "parents, spouse, children, and siblings." *Fast Horse v. United States*, 101 Fed. Cl. 544, 548 (2011) (quoting *Black's Law Dictionary* 273 (8th ed. 2004)) (internal citations omitted). Representation by *pro se* litigants of a non-acknowledged tribe is not permitted. *See Williams v. United States*, 482 Fed. Appx. 580, 582 (Fed. Cir. 2012) (holding that a *pro se* litigant was barred from asserting claims on behalf of an Indian tribe that was not federally recognized.); *Ayanuli v. United States*, No. 18-569L, 2018 WL 3486110, at *3 (Fed. Cl. July 19, 2018) (same); *Michael v. United States*, No. 14-757L, 2014 WL 5395877, at *2 (Fed. Cl. Oct. 23, 2014) ("*Pro se* representation [of an alleged Indian group] is prohibited under RCFC 83.1(a)(3) because the group has not been federally acknowledged as a sovereign Indian tribe."). Neither Mr. Locklear nor Mr. Hardison are attorneys, and therefore they may not bring claims on behalf of others, including the "Six Nations of Indians."

2. *The "Six Nations of Indians" was not a party to the Treaty of 1794.*

The "Six Nations of Indians" was not party to the treaty cited by the plaintiffs. The signing members of the Treaty of 1794 were the several tribes that comprised the Iroquois Confederacy, collectively known as the Six Nations. *See Tuscarora Indian Nation*, 362 U.S. at 121 n.18; *Six Nations*, 173 Ct. Cl. at 902. As a nonparty to the treaty, neither Mr. Locklear and Mr. Hardison as individuals, nor the "Six Nations of Indians" would have a cause of action to enforce said treaty. *See Medellin v. Texas*, 552 U.S. 491, 505 (2008) ("A treaty . . . 'depends for the enforcement of its provisions on the interest and the honor of the governments which are parties to it.'") (quoting *Head Money Cases*, 112 U.S. 580, 598 (1884)). "[I]nternational agreements, even those directly benefiting private persons, generally do not create private rights or provide for a private cause of action in domestic courts." *Id.* at 506 n.3 (quoting *Restatement (Third) of Foreign Relations Law of the United States* § 907, cmt. a (Am. Law Inst. 1987)).

3. *Plaintiffs' claims are time-barred.*

To the extent Mr. Locklear and Mr. Hardison allege takings of land under the Fifth Amendment, those claims are time-barred. This court has jurisdiction over takings claims because the Takings Clause is a money-mandating constitutional provision. *Jan's Helicopter Serv., Inc. v. Federal Aviation Admin.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008) ("[T]he Takings Clause of the Fifth Amendment is a money-mandating source for purposes of Tucker Act jurisdiction."). Nonetheless, even under a generous reading, plaintiffs' takings claim would have accrued in the 1700s and consequently is far outside this court's six-year statute of limitations.

28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."); *see also Ayanuli*, 2018 WL 3486110, at *4.

4. *The court lacks jurisdiction over plaintiffs' claims for other reasons.*

This court does not possess jurisdiction to entertain the claims of Mr. Locklear and Mr. Hardison arising out of the alleged conduct of local, state, and federal government officials. The court may exercise jurisdiction only over "claim[s] against the United States," not claims against private or state-level actors. 28 U.S.C. § 1491(a)(1); *Fullard v. United States*, 78 Fed. Cl. 294, 300-01 (2007) ("This court does not have jurisdiction to hear claims against individual federal government officials, prosecutors, or judges. . . [or] states or state officials."). Thus, the plaintiffs' claims involving parties other than the United States are outside this court's jurisdiction and must be dismissed.

Claims sounding in tort are also outside the scope of this court's jurisdiction. *See* 28 U.S.C. §1491(a)(1); *Shearin v. United States*, 992 F.2d 1195, 1197 (Fed. Cir. 1993). Mr. Locklear and Mr. Hardison assert a myriad of claims such as identity theft, theft of property, theft of land, denial of economic development, and harassment. Compl. at 5-9, 11. To the extent these claims sound in tort, this court does not possess jurisdiction to hear them. *See Cycenas v. United States*, 120 Fed. Cl. 485, 498 (2015) ("To the extent plaintiff's complaint asserts claims of . . . identity theft . . . and trespass, those claims sound in tort, or allege criminal conduct . . . [and] this court lacks jurisdiction to adjudicate those claims."); *Mastrolia v. United States*, 91 Fed. Cl. 369, 381 (2010) ("[C]laims for pain and suffering, emotional distress, and mental anguish sound in tort.") (citation omitted). As such, these claims must be dismissed.

Nor can this court exercise jurisdiction over alleged criminal, human rights, or religious rights violations. To the extent Mr. Locklear and Mr. Hardison allege theft or trespass as criminal violations, *see* 18 U.S.C. §§ 1163, 1167, this court does not possess jurisdiction over these claims. *See* 28 U.S.C. 1491(a); *Fernandez de Iglesias v. United States*, 96 Fed. Cl. 352, 363 (2010) ("[T]he Court of Federal Claims lacks jurisdiction over criminal claims.") (citation omitted). Further, this court does not have jurisdiction to hear claims of human rights or religious rights violations that are not premised on a money-mandating provision of law. *Sanders v. United States*, 34 Fed. Cl. 75, 80 (1995) ("This court does not have jurisdiction to entertain general civil rights claims that are not based upon an appropriate money-mandating provision."); *see also Marlin v. United States*, 63 Fed. Cl. 475, 476 (2005) ("[This] [c]ourt does not have jurisdiction to consider civil rights claims brought pursuant to 42 U.S.C. §§ 1981, 1983, or 1985."). As the plaintiffs have failed to identify any money-mandating provisions of law that would plausibly relate to the rights violations they allege, the court may not entertain those claims.

Finally, the court does not possess jurisdiction to award equitable relief to transfer land or eagles to the "Six Nations of Indians." *See Williams v. United States*, No. 10-880L, 2011 WL 3891124 at *1, *4 (Fed. Cl. Sept. 2, 2011) (holding that requests to return ancestral lands by a *pro se* Indian plaintiff were equitable in nature and thus outside this court's jurisdiction), *aff'd*, 482 Fed. Appx. 590.

6

**B.     Rule 12(b)(6) – Failure to State a Claim for Which Relief Can be Granted**

In addition to the numerous jurisdictional flaws, the plaintiffs' complaint also fails to state a claim for which relief can be granted. The complaint makes implausible conclusory allegations regarding actions by various agents of the state, local, and federal governments. It also makes unsupported claims about the rights of "[t]reaty Indians," and the relationship between the "Six Nations of Indians" and the United States based on an incorrect interpretation of the Treaty of 1794. *See generally* Compl. Even taking into account the more lenient pleading requirements for *pro se* litigants, *McZeal*, 501 F.3d at 1356, Mr. Locklear and Mr. Hardison's complaint fails to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

Moreover, Mr. Locklear and Mr. Hardison's vague invocation of claims based on "bad men" clauses also fails to state a cause of action on which relief could be granted.[4] Although the Federal Circuit has held that Tucker Act jurisdiction extends to certain claims under bad men provisions, *Tsosie*, 825 F.2d at 399-400, the plaintiffs here fail to allege facts sufficient to state a claim under such provisions, *see Twombly*, 550 U.S. at 555 ("[P]laintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . .") (citing *Papasan*, 478 U.S. at 286). Notably, the Treaty of 1794 does not have a money-mandating "bad men" provision. *See* 7 Stat. 44, 46.

## CONCLUSION

For the reasons stated, defendant's motion to dismiss is GRANTED. The clerk shall enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

Charles F. Lettow
Senior Judge

---

[4]As *Ayanuli* explains:

> Bad men clauses appeared in nine treaties executed between the United States and native American tribes in 1868. *See* Note, *A Bad Man is Hard to Find*, 127 Harv. L. Rev. 2521, 2525 (2014). Bad men clauses typically contained language to the following effect: "If bad men among the whites . . . shall commit any wrong upon the person or property of the Indians, the United States will . . . proceed at once to . . . reimburse the injured person for the loss sustained." *Id.* at 2525-26. Although bad men claims have been infrequently litigated, this court has exercised jurisdiction over such claims. *See id.* at 2528-29; *see also Elk v. United States*, 87 Fed. Cl. 70, 72, 96 (2009); *Hebah v. Untied States*, 192 Ct. Cl. 785, 792 (1970).

*Ayanuli*, 2018 WL 3486110, at *4 n.2.